O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **FEDERICO RODRIGUES,** | ) | NO. EDCV 10-629-R(MAN) |
| | ) | |
| **Plaintiff,** | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| v. | ) | COMPLAINT WITH LEAVE TO AMEND |
| | ) | |
| **J.L. NORWOOD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

Plaintiff, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint, pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971), on April 30, 2010 ("Complaint").

Congress has mandated that courts perform an initial screening of civil actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. This Court "shall" dismiss such a civil action brought by a prisoner before service of process if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against

a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). In screening such a complaint, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff is currently in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Complex at Coleman, Florida. (Complaint, Parties, ¶ 1.) His claims arise out of his confinement at the Federal Correctional Complex at Victorville, California ("Victorville"). (*Id.*) He names the following defendants: Warden J.L. Norwood; Associate Warden R. Ali; Captain Bourne; SIS Lieutenant Nunez; Lieutenants C. Schindehette and T. Patterson; Dr. Jesus Fernandez; BOP Director Harley Lappin; BOP Western Regional Counsel Harlin Penn; BOP Supervisory Attorney Eliezer Ben-Shmuel; and two officials of United States Department of Justice, Office of Information Policy, Janice Galli McLeod and Anne D. Work. (*Id.* at ¶¶ 2-12.)

Plaintiff alleges that he is a citizen of the Dominican Republic. (Complaint, Parties, ¶ 1.) On February 6, 2008, he arrived at Victorville at the same time as another Dominican inmate. (Complaint, Facts, ¶ 1.) Plaintiff did not know that the other Dominican inmate had

2

"serious problems" with a group of Victorville inmates who were expecting his arrival. *(Id.* at ¶ 2.) Defendant Nunez interviewed plaintiff to see if there were any reasons why plaintiff could not safely be released into the general population. *(Id.* at ¶ 3.) The other Dominican inmate had already told Nunez that he had enemies in the general population, and Nunez had placed him in protective custody in segregation. *(Id.* at ¶ 4.) While interviewing plaintiff, Nunez adopted a hostile tone, and plaintiff responded in kind. *(Id.* at ¶ 5.) At the conclusion of the interview, Nunez told plaintiff that he was going to send him to his death. *(Id.)* Nunez then released plaintiff into the general population. *(Id.* at ¶ 6.)

Before releasing plaintiff, Nunez told a group of inmates that the Dominican with "problems" was being placed in segregation and the Dominican without problems would be placed in the general population. (Complaint, Statement of the Facts, ¶ 7.) However, Nunez did not convey this information to the group that had "problems" with the other Dominican, and they believed that plaintiff was the man they wanted. *(Id.* at ¶ 6.) On February 7, 2008, these inmates approached plaintiff and repeatedly stabbed him. *(Id.* at ¶ 7.) Plaintiff sustained 45 stab wounds. (Complaint at p. 2.) He was transported by helicopter to the hospital and remained there for a week. *(Id.* at ¶ 7.) When plaintiff returned to prison, he was housed in segregation in an unsanitary area and was not provided with adequate medical care. *(Id.)* On March 12, 2008, plaintiff was forced to return to the general population. *(Id.* at ¶ 19.)

Plaintiff contends that defendants attempted to cover up Nunez's

3

misconduct and/or failed to conduct an adequate investigation. (Complaint, Statement of the Facts, ¶¶ 9-18.) Defendants McLeod and Work prevented plaintiff from gathering evidence regarding the other defendants' misconduct when they denied his Freedom of Information Act ("FOIA") request for records pertaining to the incident. (Complaint, Parties, ¶ 12, Statement of the Facts, ¶ 13.)

Plaintiff asserts the following claims: (1) an Eighth Amendment claim for deliberate indifference to his safety; (2) an Eighth Amendment claim for deliberate indifference to his serious medical needs; (3) a due process claim; (4) an equal protection claim; and (5) claims under 42 U.S.C. §§ 1985 and 1986. (Complaint at pp. 10-11.) He seeks damages and an injunction enjoining defendants and their agents from retaliating against him or transferring him to a facility containing persons who would harm him for filing this complaint. (*Id.* at p. 12.)

**DISCUSSION**

**I. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO HIS SAFETY AGAINST ANY DEFENDANT EXCEPT NUNEZ.**

The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. <u>Farmer v. Brennan</u>, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976 (1994). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Id.* at 828, 114 S. Ct. at 1974. However, not every injury suffered by one inmate at the hands of another translates into constitutional liability for prison officials

4

responsible for his safety. *Id.* at 834, 114 S. Ct. at 1977. To be liable, the defendant must not only have been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, but also must have actually drawn the inference. Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

Plaintiff has alleged that defendant Nunez knew that there was a contract on the life of another Dominican inmate who arrived at Victorville on the same day as plaintiff, and nevertheless, Nunez released plaintiff into the general population without informing the inmates planning the assault that plaintiff was not their intended victim. (Complaint, Statement of the Facts, ¶¶ 4-6.) Moreover, plaintiff alleges that Nunez told him that he was sending him to his death. (*Id.* at ¶ 5.) Plaintiff was stabbed 45 times and sustained serious injuries. (Complaint at p.2, Statement of the Facts, ¶ 7, 17.) The Court concludes that these allegations are sufficient to state an Eighth Amendment claim against Nunez for deliberate indifference to plaintiff's safety.[1]

Plaintiff has not, however, alleged such an Eighth Amendment claim against any of the other defendants. Liability under Bivens must be based on personal involvement by the defendant. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009)("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

---

[1] Although this claim withstands screening, plaintiff must re-allege it in any amended complaint he files to continue pursuing it.

individual actions, has violated the Constitution."); *see also* <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989)("Liability under Section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."; internal citation omitted).[2] "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). Moreover, there must be a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446-47 (9th Cir. 1991). Especially when a plaintiff seeks to hold a supervisor liable for damages, the inquiry into causation must be individualized and must focus on the duties and responsibilities of each individual defendant. <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

Here, plaintiff has not alleged facts showing any connection between defendants Norwood, Ali, Bourne, Schindehette, Patterson, Fernandez, Lappin, Penn, Ben-Shmuel, McLeod, and Work and the failure to protect him from assault. Plaintiff does not allege that these defendants knew anything about the planned assault on the other Dominican inmate; he only alleges that, afterwards, they helped cover

---

[2] Although <u>Taylor</u> arose under 42 U.S.C. Section 1983, actions under <u>Bivens</u> are identical to those brought under Section 1983 "save for the replacement of a state actor under § 1983 by a federal actor under <u>Bivens</u>." <u>Van Strum v. Lawn</u>, 940 F.2d 406, 409 (9th Cir. 1991).

6

up defendant Nunez's actions and/or hindered plaintiff's attempts to obtain information about the incident. (Complaint at pp. 7-8.) Thus, plaintiff has not alleged any conduct by these defendants which could be construed as deliberate indifference on their part and which could be deemed to have caused the attack on him.

To the extent that plaintiff attempts to base an Eighth Amendment claim on allegations that defendants Norwood, Ali, Bourne, Schindehette, and Patterson subsequently returned him to the general population, his claim is deficient. (Complaint, Statement of the Facts, ¶ 19.) Although plaintiff alleges that did not want to return to the general population and feared for his life, he never alleges that he suffered another attack. (*Id.*) While a prisoner need not wait to be injured before seeking injunctive relief, *see* Farmer, 511 U.S. at 845, 114 S. Ct. at 1983, a prisoner seeking damages must allege that the risk materialized and caused him physical injury. *See* 42 U.S.C. § 1997e(e) (prisoner may not bring federal action for mental or emotional injury without a showing of physical injury); Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996)(explaining that "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

Accordingly, plaintiff's Eighth Amendment claims against defendants Norwood, Ali, Bourne, Schindehette, Patterson, Fernandez, Lappin, Penn, Ben-Shmuel, McLeod, and Work for deliberate indifference to his safety must be dismissed.

## II. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT FOR DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS.**

A prisoner asserting a Section 1983 claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(*en banc*). Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." *Id.* at 1059.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). A showing of medical malpractice or negligence is insufficient to establish deliberate indifference. *Id.* "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292.

8

If medical treatment is delayed rather than denied, the delay generally amounts to deliberate indifference only if it caused further harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)(*per curiam*). Moreover, a mere difference of opinion between an inmate and medical staff, or among medical staff, regarding appropriate medical treatment is generally insufficient to constitute deliberate indifference. *See* Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A prisoner asserting an Eighth Amendment claim against his physician must show that the course of treatment the physician chose was medically unacceptable under the circumstances, and that the physician chose it in conscious disregard of an excessive risk to the plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

Plaintiff alleges that, when he returned to prison after receiving medical care for his stab wounds in the hospital, he was kept in an unsanitary and "non-medical" area, and he was not provided with adequate medical care and treatment. (Complaint, Statement of the Facts, ¶¶ 7, 8.) However, plaintiff does not allege in what respects his medical care was deficient, nor does he allege what, if any, injuries he sustained as a result of the deficient medical care and unsanitary conditions. Moreover, plaintiff fails to allege a connection between the purported defects in his medical care and the defendants against whom he is asserting this claim. There are no factual allegations from which it could be inferred that any of defendants were deliberately

indifferent to plaintiff's medical needs.[3]

Accordingly, plaintiff's Eighth Amendment claims for deliberate indifference to his medical needs must be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DUE PROCESS CLAUSE.

Plaintiff contends that defendants attempted to cover up Nunez's misconduct and deprived him of an adequate resolution of his claim though administrative means. (Complaint at 16.)

Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. *See* Karim-Panahi, 839 F.2d at 625; Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993). A cover-up claim is premature when, as here, plaintiff's action seeking redress for the underlying constitutional violations remains pending. *See* Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 (same).

Plaintiff also cannot allege a due process claim based on his allegations that defendants hindered his pursuit of administrative

---

[3] As to defendants Lappin, Penn, Ben-Shmuel, McLeod, and Work, who are not Victorville officials, it is difficult to imagine what allegations *could* cure this deficiency. Nevertheless, the Court will grant plaintiff leave to amend.

10

remedies. A prisoner cannot state a due process claim based on the handling of his grievances. *See* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)("[t]here is no legitimate claim of entitlement to a grievance procedure"); *see also* Larkin v. Watts, 300 Fed. Appx. 501, 2008 WL 4946284, *1 (9th Cir. Nov. 12, 2008)("Larkin's claim that the defendants improperly processed his administrative complaints or grievances does not give rise to a cognizable constitutional or Bivens claim")(citable under Fed. R. App. P. 32.1(a) and Ninth Circuit Rule 36-3).

Finally, plaintiff's allegations against defendants McLeod and Work rest on their denial of his appeal from the BOP's denial of his FOIA request for records pertaining to the February 7, 2008 assault. (Complaint, Parties, ¶ 12, Ex. C.) Even if, *arguendo*, that denial was improper, allegations that these defendants denied plaintiff's FOIA request cannot provide a basis for a Bivens claim against them. *See* Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 777 (D.C. Cir. 2002)(allegations that defendant violated plaintiff's due process rights by mishandling his FOIA request failed to state a claim for which a Bivens remedy was warranted; FOIA statutory scheme precluded damage remedy under Bivens); Kroposki v. F.A.A., 2009 WL 2710223, *2 (D. Conn., Aug. 26, 2009)("Courts considering the question of whether a plaintiff can maintain a Bivens remedy against a federal official in his or her individual capacity in cases involving FOIA have declined to create such a remedy because the comprehensive scheme that FOIA provides to administer public rights precludes the creation of a Bivens remedy.";

internal quotations marks omitted).

Accordingly, plaintiff's due process claims must be dismissed.

### IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE.

Plaintiff contends that defendants "acted out of invidious and racial discrimination." (Complaint, Statement of the Facts, ¶ 14.)

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). The threshold allegation is that plaintiff was similarly situated to other inmates who received different treatment. *See* Fraley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993). Plaintiff must also "plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998); *see* Iqbal, 129 S. Ct. at 1948 ("plaintiff must plead and prove that the defendant acted with discriminatory purpose").

Applying these principles, the Court finds plaintiff's allegations wholly insufficient to state an equal protection claim. Plaintiff has not set forth in what manner the defendants discriminated against him based on race or how his treatment differed from that of similarly situated inmates. To the extent that Nunez took measures to protect the safety of the other Dominican inmate but not of plaintiff, the

12

difference in their treatment could not have been racially or ethnically motivated, because plaintiff alleges that both men are Dominican and look alike. The Complaint contains no factual allegations whatsoever from which it could be inferred that defendants acted with discriminatory purpose. *See* Iqbal, 129 S. Ct. at 1948. Even a liberal construction of a complaint cannot supply essential elements of a claim that were not pled. Ivey v. Board of Regents of University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Accordingly, plaintiff's equal protection claim must be dismissed.

**V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. SECTION 1985 OR SECTION 1986.**

Plaintiff purports to assert claims under 42 U.S.C. §§ 1985 and 1986. (Complaint at p. 11.)

Plaintiff does not specify the subsection under which his Section 1985 claim arises. Section 1985(1) prohibits conspiracies to prevent a United States officer from performing his or her duties. Bretz v. Kelman, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985). Section 1985(2) prohibits conspiracies to intimidate parties, witnesses, or jurors in federal courts (first clause) and interfere with the administration of justice in state courts (second clause). Kush v. Rutledge, 460 U.S. 719, 724-25, 103 S. Ct. 1483, 1486-87 (1983); Bretz, 773 F.2d at 1027 n.3. Section 1985(3) prohibits conspiracies to deprive a person of the equal protection of the laws (first clause), or to hinder state authorities from securing equal protection of the laws (second clause),

13

or to interfere with federal elections (third clause).  <u>Kush</u>, 460 U.S. at 720-25, 103 S. Ct. at 1485-87; <u>Bretz</u>, 773 F.2d at 1027 n.3.  Plainly, plaintiff's claim can arise only under the first clause of Section 1985(3).

To state a claim under the first clause of Section 1985(3), plaintiff must allege a racial or other class-based discriminatory animus.  <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971).  Plaintiff also must include factual allegations showing the requisite conspiracy.  <u>Karim-Panahi</u>, 839 F.2d at 626.  Here, plaintiff has alleged neither facts showing discriminatory animus nor facts showing a conspiracy.  Plaintiff, therefore, has not alleged a claim under Section 1985(3).

Section 1986 imposes liability on a person who knows of any impending violation of Section 1985 but neglects or refuses to prevent it.  <u>Karim-Panahi</u>, 839 F.2d at 626.  "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."  *Id.; see also* <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1223 (9th Cir. 1990)(same).  Plaintiff's failure to state a claim under Section 1985 is fatal to his claim under Section 1986.

Accordingly, plaintiff's claims under Sections 1985 and 1986 must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed with leave

14

to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the Complaint described herein. The First Amended Complaint, if any, shall be complete in itself. It shall not refer in any manner to the original Complaint.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed.**

DATED: July 9, 2010

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE